FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

DEC 1 0 2009

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# GREENBELT DIVISION

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

| | | |
|---|---|---|
| **GROUND ZERO MUSEUM WORKSHOP** | § | |
| **420 West 14th Street** | § | |
| **New York, NY 10014,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **GARY MARLON SUSON** | § | |
| **420 West 14th St.** | § | |
| **New York, NY 10014** | § | |
| **PLAINTIFFS** | § | **DKC09 CV 3288** |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **WILLIAM WILSON** | § | |
| **d/b/a CART DESIGNS** | § | |
| **721 Bright Meadow Dr.** | § | |
| **Gaithersburg, MD 20878** | § | |
| **DEFENDANT** | § | |

## COMPLAINT FOR MONETARY DAMAGES AND
## REQUEST FOR INJUNCTIVE RELIEF

Plaintiffs, Ground Zero Museum Workshop (hereinafter "GZM"), an IRS 501(c)(3) organization

based in New York City, New York and Gary Marlon Suson (hereinafter "Suson"), an individual

residing in New York City, New York (collectively "Plaintiffs") for their Complaint against Defendant

William Wilson (hereinafter "Wilson" or "Defendant") an individual residing in Gaithersburg, MD and

doing business as Cart Designs, allege as follows:

### Parties

1.  Plaintiff Ground Zero Museum Workshop is an IRS 501(c)(3) organization created and existing

    under the laws of New York State and the United States of America. It is located at 420 West

    14th Street, Floor 2, New York, NY 10014.

1

2.    Plaintiff Gary Marlon Suson is an individual residing in and doing business in New York State. His principal place of business is located at 420 West 14ᵗʰ Street, New York, NY 10014.

3.    Defendant William Wilson is an individual residing in and doing business in Gaithersburg, Maryland.  His residence and principal place of business is located at 721 Bright Meadow Dr., Gaithersburg, MD 20878.

### Jurisdiction and Venue

4.    This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331 as an action that arises under the laws of the United States. The Court further has exclusive federal jurisdiction pursuant to 28 U.S.C. § 1338(a) as a case arising under the Copyright Act. This Court has subject matter jurisdiction over Plaintiff's claims for unauthorized access to website and related claims pursuant to 17 U.S.C. §1203.

5.    This Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332. The controversy is between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.    This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of Maryland pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendant resides in this District and a substantial part of the events giving rise to the claims occurred in this District

8.    Personal jurisdiction over Defendant William Wilson is proper because a) his residence and principal location of business is located in this District and, (b) has committed tortious and other

2

actionable acts alleged herein with foreseeable consequences in this District, and has caused
actual tortious injury in this District.

## Facts

9.  The Ground Zero Museum Workshop opened September 7, 2005. It showcases 100 images and
    artifacts from the "Recovery Period" at Ground Zero and is featured regularly in the top 10 list of
    many travel websites. Gary Marlon Suson is the executive director and founder of the Museum

10. Suson served as "Official Photographer at Ground Zero for the Uniformed Firefighters
    Association", a title confirmed by Fire Union Official Rudy Sanfilippo and former FDNY Chief
    of Department Dan Nigro.

11. Suson is an off-Broadway actor registered with AEA, SAG and AFTRA theatrical unions..

12. Due to his work at "Ground Zero" after September 11, 2001, Suson suffers from Post-Traumatic
    Stress Disorder for which he is undergoing treatment.

13. In July 2005, Mr. Nakka Murali of India created a website for GZM, under contract with GZM,
    with the internet address of www.groundzeromuseum.com.    Mr. Murali has served as the
    webmaster of the GZM website since its inception. He performs all updates, changes, designs
    and maintenance of the website.  Mr. Murali had, over the course of four years, inserted
    numerous "meta-tags" into the GZM website, which are key words that are recognized by search
    engines and can make a site rank higher.

14. GZM holds the copyright on the full GZM website and controlled the domain name
    "groundzeromuseumworkshop.com and also www.groundzeromuseum.com." GZM has held the
    copyright to the website and controlled the domain names since its inception.

15. On June 16, 2007, Defendant Wilson and partner Teresa Polino visited GZM.

16.     Impressed with the work of Suson and GZM, Wilson offered to assist GZM by designing a
        shopping cart page for the GZM Shop page as well as revamping the look of his Gift Shop page.
        This shopping cart was an addition to the already existing Gift Shop page and the website as a
        whole.

17.     Suson accepted the offer of Wilson to design a shopping cart and revamp the look of the gift
        shop page as a part of the collective work of the GZM website.

18.     During the summer of 2007, Suson provided to Wilson layouts, data, links and designs for the
        Gift shop page while Wilson encoded the shopping cart page.

19.      Upon receiving the layouts and designs, at the direction of Suson, Wilson created the code for
        the shopping cart page.   This code was to be inserted into the existing GZM website files so that
        the shopping cart would be integrated into the existing webpage.

20.     The shopping cart code was inserted into the existing GZM website files on or about the fall of
        2007.  After the insertion of the code, the Cart Designs logo appeared on the bottom of the
        website pages as a sponsor of GZM.

21.     While designing the code, Wilson suggested a new hosting service for the GZM website, A-1
        Hosting Services.

22.     Suson explained that he was content with Intercom.com in New York as Official Web
        Host/Sponsor, but Wilson explained that A-1 had a better high volume server and the website
        would run faster and smoother on A-1's servers. Suson explained that Intercom did not charge to
        host his website and Wilson said he would speak to A-1 about sponsorship.

23.     After speaking with Wilson, A-1 agreed to be a permanent sponsor, according to Wilson.

24.   A-1 Hosting Services agreed to donate hosting services to GZM as it was in the process of
      becoming a non-profit organization.   Hosting services are where the host company stores the
      website files on its servers, rather than on the owner's business computer.   A host does not own
      the website, but merely serves as a storage facility from which the site can be seen on the
      worldwide web. Suson agreed to switch hosts as a result of Wilson's persistence.

25.   In the spring of 2009, Wilson also offered to design a donations page for the GZM website.
      This page, as part of the overall GZM website, would allow people viewing the GZM website to
      make online, secure donations to the work of GZM.

26.   At the direction of Suson, Wilson designed the donations page, using Suson's 9/11 images and
      ideas gathered by Suson.

27.   The page code, written and designed by Wilson, was inserted into the GZM website files on or
      about Summer of 2009.

28.   December 31, 2008, GZM was granted non-profit 501(c)(3) charitable organization status by the
      United States Internal Revenue Service.   This status allowed all financial and in-kind donations
      to GZM to be tax-deductible.

29.   Non-profit 501(c)(3) status is necessary when raising funds as people are more likely to donate
      to organizations where a tax deduction is given for donations.

30.   Spring of 2009, after a request by Wilson, GZM provides Wilson with a tax deduction receipt for
      $9,900.00 for the work for hire performed in creating the shopping cart code writing, gift shop
      page and the donations page in 2008 and 2009.

31.   It was explained to Suson by Wilson that this was to be a one-time receipt for the work for hire
      performed as part of the overall collaborative work of the GZM website.

32.     On or about August 9, 2009, derogatory comments about GZM and Suson are made on the
        tripadvisor.com "travel forum." This forum is for anyone and everyone to post their comments
        about any travel related subject and does not reflect the opinions of the owners or creators of the
        tripadvisor.com website.

33.     These comments refer to defamatory articles (and eventual lawsuit by Suson) written by the New
        York Post in 2005 attacking the Museum's credibility. Wilson, without authorization from GZM
        and without holding any official position with GZM, takes it upon himself to defend GZM in the
        forum. In the course of this unauthorized action, Wilson reveals confidential information about
        GZM.

34.     GZM, upon being made aware of this unauthorized action and the revealing of confidential
        museum information, facts and figures, requests that Wilson not respond on behalf of GZM.   It
        is the job of Suson, as the Executive Director of GZM to answer for and uphold the reputation of
        the Museum.

35.     Wilson ordered GZM founder and Executive Director Suson not to respond to the forum posts.

36.     On or about August 10, 2009, after being informed that his actions on the tripadvisor.com
        website were not authorized, Wilson sends a formal email to Suson resigning from his duties and
        any association with GZM.

37.     In his resignation email, Wilson falsely claims to be resigning as webmaster of the GZM
        website.  At all times from its inception to present, the GZM webmaster has been Mr. Nakka
        Murali in India.

38.    In his resignation email, Wilson also states he is *returning control* of the domain name to GZM.
       At all times since its inception to the present, the GZM website has only had two domain names
       "groundzeromuseumworkshop.com" and www.groundzeromuseum.com.

39.    These domain names were registered with GoDaddy.com in the name of Mr. Suson and his
       Museum, who remained in the control of these domain names since their inception to the present.

40.    Wilson never had control of or ownership of the domain names for the GZM website.

41.    At the time of his resignation email, Wilson had no duties with GZM other than periodic text
       changes on the site at the request of Suson if Mr. Murali was unavailable.

42.    GZM's only response to Wilson's resignation email was to request that Wilson do no harm to the
       GZM website.

43.    On or about August 10, 2009, after receiving the request to not harm the GZM website, Wilson,
       without authorization, used the security code designed to protect the GZM website files to access
       those files on the A-1 Hosting servers and deleted them or "hid them" in their entirety from the
       A-1 servers.

44.    In particular, Wilson knew that there were a few main "default pages" to the 9/11 website –
       meaning those that appear regularly when surfers do a search for a 9-11 Museum – and he
       deleted or hid those files (default pages) so it would appear to anyone trying to access Suson's
       Museum website as though the website was no longer in existence.

45.    Wilson intentionally deleted or hid the files/folders for the "Locations and Hours page" and
       "Home Page" and "Opening Flash page" which normally allowed potential guests to buy tickets.

46.    Wilson hid the files/folders for the Museum's home page, Locations Page and hid the
       files/folders for the opening introduction page.

47. Wilson was not authorized to delete or hide the GZM files/folders from the A-1 hosting servers.

48. The security code that protected the GZM website files on the A-1Hosting servers was a two-stage technological measure in which in the ordinary course of use requires the input of information (the correct code) in order to gain access. It consisted of a Log-In name and passcode.

49. Wilson did not have the authority of the owner of the code, GZM, to access the website or make changes to or alter the files without prior permission. His inputting of the code without authority of the owner was a circumvention of the technological measures designed to protect access to the GZM files.

50. This deletion/hiding of the GZM website files and folders from the A-1 Hosting servers caused the GZM website to disappear from the worldwide web. It could no longer be viewed by anyone accessing the internet and entering the domain name or those who clicked on GZMW search engine default pages – main portals to the GZMW website – wound up going to a "page not found" error page.

51. Wilson not only deleted or hid the files he claimed ownership of, the work for hire shopping cart and Gift Shop pages, but all files related to the entire collaborative work of the GZM website.

52. This deletion of the entire GZM website caused a loss of ticket sales, gift shop sales, available information about the Museum and decreased rankings in search engines.

53. Rankings in search engines are important to a website in order to be located on the world wide web. When a person accessing the worldwide web enters a search term into a search engine, the pages matching the search terms that appear are ranked according to popularity. Popularity is determined through complex algorithms that measure how often a site is accessed through the

8

worldwide web.  The disappearance of a site from the worldwide web affects its ability to be accessed.  This lack of access affects the measurement of its popularity, which in turn affects its ranking.  A lower ranking site appears lower on the list of search term matches making it less likely to be accessed by the person searching.

54. Also, when the GZM website files were deleted, the links to numerous interviews and articles about GZM were lost.  Some of these links cannot be restored and are lost forever.

55. In his August 10, 2009 resignation email, Wilson stated he will "contact my people and have them pull the plug."

56. On or about August 11, 2009, Wilson emailed A-1 Hosting services.  Again, he falsely claimed he was the webmaster for GZM.  In the August 11, 2009 email, Wilson admits to destroying the GZM website.

57. In the August 11, 2009 email to A-1 Hosting services, Wilson questions the non-profit status of GZM.

58. On or about August 20th, 2009, A-1 Hosting informed GZM it would no longer be willing to donate hosting services for the GZM website.  GZM was given thirty (30) days to find a new host.

59. After contact from local law enforcement in Montgomery County, Maryland, Wilson agrees to restore the GZM website and asks Suson for the new access codes to A-1's server so he can "fix" the website.

60. GZM provided the new access codes to Wilson for the sole purpose of restoring the GZM website to the format it held on August 10, 2009.

9

61. At the same time Wilson asks Suson for access to the Museum's private GOOGLE Adwords account, claiming he will "make the website rank higher in the search engines."

62. Suson turns over the codes to Wilson, who now has access to the Museum's GOOGLE account and billing information.

63. Wilson was not authorized to make any modifications or to delete any pages from the entirety of the website as it existed on August 10, 2009.

64. Wilson only restored the website to the appearance it had at its inception in 2005. All updates and changes in the previous four years were not restored.

65. Such an act by Wilson damaged the Museum's search engine rankings and in the process "confused" the search engines, who were used to reading the 2009 version of the site.

66. Wilson did not restore the works for hire as part of the collaborative work of the GZM website the shopping cart or the Museum Gift Shop page.

67. On or about August 18, 2009, Wilson again ended his work with GZM via email.

68. Upon receiving the August 18, 2009 email from Wilson, GZM changed the access codes with A-1 for the website files to protect itself from harm. The access code was virtually unbreakable, hand chosen by Suson and contained numerous symbols and numbers.

69. On the same date, A-1 Hosting received a false claim from Wilson claiming ownership of the shopping cart, and gift shop page created as works for hire as part of the collaborative work of the GZM website. Upon receipt of this false claim, A-1 Hosting "froze" the GZM website preventing it from being viewed or changed.

70. On or about August 20, 2009, in an email to GZM, Wilson claimed ownership of the shopping cart and donation pages that were created as works for hire as part of the collaborative work of the GZM website

71. Unknown to Suson at the time, Wilson removed all the relevant meta-tags from the GZM website so the search engines will not recognize the GZM website.

72. A failure of the search engines to recognize the GZM website means it will be lower ranked by the search engines and harder to locate.  This makes it harder for visitors to find out information about the Museum and/or order tickets and Gift Shop items.

73. On or about August 21, 2009 A-1 Hosting claimed that malicious files had been uploaded to the A-1 servers using GZM codes.  These malicious files would have allowed an attack on the A-1 servers.

74. No one at GZM uploaded any malicious files or authorized the uploading of malicious files to the A-1 Hosting servers.

75. To protect itself from any attack, A-1 Hosting changed the security access codes to the GZM website files.  GZM was not provided the new code and was shut out of its own website files.

76. Throughout the month of September, GZM worked with A-1 Hosting to regain access to its files and restore the website.

77. September is the anniversary month of the September 11th attacks and as such is a very important month for the Ground Zero Museum Workshop.

78. On or about September 11, 2009, Suson emailed A-1 Hosting requesting they contact Wilson to regain the codes to access the Museum Gift Shop page.   This page is connected to the shopping cart, but exists independently and apart from the shopping cart.

79.  Wilson was holding the security access codes to the Museum Gift Shop page, a page on which he had done no work for hire as part of the collaborative work of the GZM website.

80.  Without the security access codes to the Museum Gift Shop page, that page could not be transferred from A-1 to the new host server with the rest of the website files.

81.  Also on or about September 11, 2009, Suson emailed A-1 to inform the host that Wilson was not authorized to access the GZM website or any its files or pages.

82.  On or about September 12, 2009, Wilson again falsely asserts ownership of the shopping cart and Museum Gift Shop created as works for hire as part of the collaborative work of the GZM website via an email to GZM.

83.  In the September 12, 2009 email, Wilson admits to removing the shopping cart and Museum Gift Shop page from the GZM website files.   Wilson was not authorized to remove these pages from the GZM website files.

84.  Also on that date, Wilson against emailed A-1 Hosting falsely asserting ownership of the shopping cart and Museum Gift Shop website pages created as works for hire as part of the collaborative work of the GZM website.

85.  In that same email to A-1 Hosting, Wilson falsely accuses Suson of using the September 11th attacks for personal profits.

86.  On or about September 13, 2009, Wilson an unknown person admitting he donated his services to GZM in creating the shopping cart and Museum Gift Shop page created as works for hire as part of the collaborative work of the GZM website.

87.  He also falsely claims that Suson gambled with Museum donations.

12

88.   On or about September 13, 2009, without authorization to use the security access codes and
      secure login, Wilson again accessed the GZM website files.  This time he destroyed the Museum
      Gift Shop page, replacing it with a page redirect command.

89.   A page redirect command is one that sends a viewer of a website to another page without the
      need to type in a website address to access the page being redirected to.

90.   In this case, the page redirect command sent those who were attempting to view the Museum
      Shop page to a New York Post story critical of GZM.

91.   Wilson was aware of the civil action between the New York Post and Suson for defamation as he
      acted as a proofreader, confidante and consultant for Suson since 2007 regarding this lawsuit.

92.   Wilson was not authorized by the website owner, GZM, to access the GZM website files or to
      redirect any page of the GZM website to the New York Post story.

93.   On or about September 14, 2009, Wilson against emailed A-1 hosting falsely asserting
      ownership of the shopping cart and the donation page created as works for hire as part of the
      collaborative work of the GZM website.

94.   On or about September 14, 2009, Wilson filed a claim under the Digital Millennium Copyright
      Act ("DCMA") falsely asserting ownership of the shopping cart and donation page created as
      works for hire as part of the collaborative work of the GZM website.

95.   This falsely filed DCMA claim caused the GZM website to be removed from access on the
      worldwide web by search engines.

96.   On or about September 14, 2009 Counsel for GZM and Suson sent via email to Wilson a Cease
      and Desist Letter.  This Cease and Desist Letter demanded that Wilson stop falsely asserting

ownership over the shopping cart and donation page and return the codes to access those pages to their rightful owner GZM.

97. The Cease and Desist Letter also requested that Wilson cease making defamatory statements regarding both GZM and Suson.

98. On or about November 20, 2009, Wilson created a website cam-scam.com for the purposes of harassing and defaming Suson and GZM.

99. Wilson alleges this website is solely for educational purposes.   However, it is a collection of false and malicious statements about Suson.

100. The website also contains a collection of negative articles about Suson with regards to the NY Post defamation suit.

101. This site is not the fair and objective statement of facts it purports to be, but is a malicious attack on the reputation and integrity of Suson.

102. As of the date of the filing of this complaint, Wilson has not complied with the requests made in the Cease and Desist letter.

103. On or about December 3, 2009, Wilson created a false Myspace page to defame Suson and GZM.

104. This fake page on the social networking site contains false information about Suson.

105. This fake page is purported to be about Gary Suson, but Mr. Suson was not involved in its creation in anyway.

106. This fake page contains scurrilous information also found on the cam-scam.com page.

107. Suson has never created a Myspace page.

**Count 1**

14

## Circumvention of Copyright Protection Systems 17 USCS §1201

108.   Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 107 of the Complaint.

109.   At all times pertinent hereto, the GZM website files were protected by a security access code and a secure log in.

110.   At all times pertinent hereto, Wilson was only authorized to use the security access code and secure log in to access the GZM web page files to assist in the integration of the shopping cart and donation pages created as works for hire as part of the collaborative work of the GZM website.

111.   At all times pertinent hereto, the security access code and secure log in were technological measures as defined in 17 USCS §1201, that effectively control access to the copyright protected work  of the GZM website.

112.   At all times pertinent hereto, GZM was the proper copyright owner of the collaborative work of the GZM website in its entirety.

113.   On or about August 10, 2009, Wilson, without authorization by the copyright owner GZM, circumvented the technological measures of the security access code and secure log in to gain access to the files of the GZM website.

114.   After circumvention the technological measures, Wilson deleted or hid the GZM files/folders, thus removing the GZM website from the worldwide web entirely.

115.   On or about September 13, 2009, Wilson without authorization by the copyright owner GZM, circumvented the technological measures of the security access code and secure log in to gain access to the files of the GZM website.

116.　After the circumvention, Wilson deleted the Museum Shop page and inserted a webpage redirect command that redirected viewers to a defamatory New York Post story critical of GZM and Suson.

117.　Plaintiff GZM was damaged by Wilson's circumvention of the technological measures that controlled access to the copyrighted work of the GZM website in that the removal of the files after the circumvention caused the GZM to be removed from the worldwide web in the first instance.　In the second instance, the Museum shop page only was removed.　These removals from the worldwide web caused GZM to lose ticket sales, donations and Museum shop sales.　It also contributed to the loss of the reputation of the Museum in that valuable history links were lost, some forever.　The redirect command to a page critical of GZM and Suson harmed GZM's reputation and standing.

### Count Two

### Copyright Infringement 18 USCS §501

118.　Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 107 of the Complaint.

119.　At all times pertinent hereto the GZM website was fixed in a tangible medium which could be perceived.

120.　The GZM website, including each individual page making up the website as a whole, is the subject of a valid copyright.

121.　GZM owns the copyright for the shopping cart and donations page made a part of the GZM website as the shopping cart and donations page were specially commissioned by Suson, as Executive Director of GZM, as a contribution to the collaborative work of the GZM website.

16

The shopping cart and donations pages were a work for hire based on an agreement evidenced by

the exchange of emails and telephone conversations between Suson and Wilson that the work

would be a work for hire.

122.   Wilson removed the right of GZM to reproduce the website on the worldwide web from GZM

without authorization to do so.   Wilson removed the right of GZM when he deleted the website

files in their entirety on August 10, 2009.   Wilson again removed that right when he only

restored the GZM website to its 2005 status, removing all updates from 2005 to the present.

Wilson further removed the right of GZM when he falsely asserted ownership over the shopping

cart and donations page on August 18, 2009 to A-1 Hosting, causing the site to be "frozen."

Finally, Wilson removed the right GZM had in GZM website to reproduce it in its entirety when

he replaced the Museum Shop page with a page containing a redirect command.   At the time of

these actions, Wilson did not possess authorization from the copyright holder, GZM, to perform

these actions.

123.   Plaintiff GZM was damaged by Wilson's infringement of the copyright held by GZM in the

GZM website in its entirety in that the removal of the files after the infringement caused the

GZM to be removed from the worldwide web in the first instance.   In the second instance, the

GZM website was missing vital information about the Museum, its operations, and its history.   In

the third instance, the Museum shop page only was removed.   These removals from the

worldwide web caused GZM to lose ticket sales, donations and Museum shop sales.   It also

contributed to the loss of the reputation of the Museum in that valuable history links were lost,

some forever.   The redirect command to a page critical of GZM and Suson harmed GZM's

reputation and standing.

## Count Three

### Conversion

124. Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 107 of the Complaint.

125. At all times pertinent hereto, GZM was the owner of the GZM website and the owner of the GZM domain name groundzeromuseumworkshop.com.

126. On the following dates, Wilson wrongfully exercised or assumed authority over the GZM website and/or its individual pages:

    a.    August 10, 2009, Wilson deleted or hid the GZM website in its entirety;

    b.    September 11, 2009, Wilson held the codes to shopping cart and Museum shop web pages such that they could not be integrated as part of the GZM website in its entirety; and

    c.    September 13, 2009, Wilson asserted authority over the Museum shop page by inserting a redirect command that directed viewers away from the GZM website to a New York Post story critical of GZM and Suson.

127. This wrongful exercise or assumption of authority over the GZM website deprived GZM of possession of the GZM website for the period of time the website was unable to be viewed on the world wide web.

128. The wrongful exercise or assumption of authority over the shopping cart and Museum shop web pages have permanently deprived GZM of the possession of those web pages.

129. Plaintiff GZM was damaged by Wilson depriving GZM of possession of its website and its individual web pages in that the removal of the files after the deprivation caused the GZM

18

website to be removed from the worldwide web. This removal from the worldwide web caused

GZM to lose ticket sales, donations and Museum shop sales. It also contributed to the loss of the

reputation of the Museum in that valuable history links were lost, some forever.   The redirect

command to a page critical of GZM and Suson harmed GZM's reputation and standing.  The

continued deprivation of the shopping cart and Museum shop web pages have deprived the

Museum of ticket sales, donations and Museum shop sales.

## Count Four

## Defamation of Gary Marlon Suson

130. Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1
through 107 of the Complaint.

131. As the founder and Executive Director of GZM, Suson's reputation is integral to the successful
operation of GZM.

132. On or about September 12, 2009, the day after the 8th Anniversary of the September 11 Attacks,
Wilson sent an email to A-1 Hosting, a third party, stating that Suson was using September 11th
for his own profit. Of note is that Suson takes no salary as curator of GZM, choosing instead to
donate his salary to charity.

133. This email was intended to induce an evil opinion of Suson in the minds of people who hold to
normal notions of morality.

134. The evil opinion would be induced by the implication that Suson was personally profiting from a
great national tragedy which would hinder him in his business of running the Ground Zero
Museum Workshop and in raising funds to keep the museum in operation.

135.    Wilson, in sending the email A-1 Hosting, acted with malice in that he knew the statement was false but chose to send it anyway as a means of harming Suson.

136.    Wilson desired to harm Suson with false, defamatory statements because Suson would not let Wilson act as the official spokesperson for GZM on travel forums/blogs

137.    Wilson further desired to harm Suson as a means of forcing Suson to relinquish the copyright to the shopping cart, and Museum Gift Shop pages, which were properly held and controlled by Suson as Executive Director of GZM.

138.    On or about September 13, 2009, Wilson sent an email to an unknown number of third parties stating that Suson was using the donations made to GZM for gambling purposes.

139.    This email was intended to induce an evil opinion of Suson in the minds of people who hold to normal notions of morality.

140.    The evil opinion intended to be induced regarding Suson was one that charges Suson with criminal conduct in state or federal prison as using donations from a non-profit for gambling purposes is a crime

141.    Wilson, in sending the email to an unknown number of third persons, acted with malice in that he knew the statement was false but chose to send it anyway as a means of harming Suson.

142.    Wilson desired to harm Suson with false, defamatory statements because Suson would not let Wilson act as the official spokesperson for GZM.

143.    Wilson further desired to harm Suson as a means of forcing Suson to relinquish the copyright to the shopping cart and Museum Gift Shop pages which were properly held and controlled by Suson as Executive Director of GZM.

144.    On or about November 20, 2009, Wilson created a website cam-scam.com.

145.    The website is available to be viewed by an unknown number of persons on the worldwide web.

146.    The website was intended to induce an evil opinion of Suson in the minds of people who hold to normal notions of morality.

147.    The evil opinion intended to be induced regarding Suson was that Suson was misappropriate 9-11 for personal profit and was a person of poor character.

148.    Wilson acted with malice in creating the website in that he acted with deliberateness and calculation.  To create a website involves obtaining a domain name, locating a host, coding the pages and uploading the pages to the servers.  It is not act of the heat of the moment.

149.    Wilson desired to harm Suson with false, defamatory statements because Suson would not let Wilson act as the official spokesperson for GZM.

150.    Wilson further desired to harm Suson as a means of forcing Suson to relinquish the copyright to the shopping cart and Museum Gift Shop pages which were properly held and controlled by Suson as Executive Director of GZM.

151.    On or about December 3, 2009, Wilson created a false Myspace page regarding Suson.

152.    This fake page is viewable to anyone accessing the Myspace social networking site.

153.    This fake page was intended to induce an evil opinion of Suson in the minds of people who hold to normal notions of morality.

154.    The evil opinion  intended to be induced regarding Suson was that Suson was misappropriate 9-11 for personal profit and was a person of poor character.

155.    Wilson acted with malice in creating the website in that he acted with deliberateness and calculation.  To create a website involves obtaining a domain name, locating a host, coding the pages and uploading the pages to the servers.  It is not act of the heat of the moment.

156.   Wilson desired to harm Suson with false, defamatory statements because Suson would not let
       Wilson act as the official spokesperson for GZM.

157.   Wilson further desired to harm Suson as a means of forcing Suson to relinquish the copyright to
       the shopping cart and Museum Gift Shop pages which were properly held and controlled by
       Suson as Executive Director of GZM.

158.   Suson was harmed by the defamatory statements made with malice by Wilson in that his
       reputation was harmed, this harm has interfered with his ability to fulfill his duties as Executive
       Director of GZM, as well as pursue his chosen profession of acting.

## Count Five

## Defamation of GZM

159.   Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1
       through 107 of the Complaint.

160.   As the founder and Executive Director of GZM, Suson's reputation is integral to the successful
       operation of GZM.

161.   On or about August 11, 2009, Wilson sent an email to A-1 Hosting stating that GZM did not
       possess 501(c)(3) status granted by the United States Internal Revenue Service.

162.   This email was intended to induce an evil opinion of GZM in the minds of people who hold to
       normal notions of morality.

163.   The evil opinion intended to be induced was that GZM was collecting donations of money and
       services through falsely pretending to be a non-profit organization.

164.   Wilson, in sending the email to A-1 Hosting, acted with malice in that he knew the statement
       was false.

165.   Wilson knew the statement was false because he had received a tax-deductible donation letter of services from GZM after GZM received its non-profit status from the IRS.

166.   Wilson desired to harm GZM with false, defamatory statements because Suson as Executive Director of GZM would not let Wilson act as the official spokesperson for GZM.

167.   Wilson further desired to harm Suson as a means of forcing Suson to relinquish the copyright to the shopping cart, Museum Gift Shop web pages which were properly held and controlled by Suson as Executive Director of GZM.

168.   On or about September 12, 2009, the day after the 8th Anniversary of the September 11 Attacks, Wilson sent an email to A-1 Hosting, a third party, stating that Suson was using September 11th for his own profit.

169.   This email was intended to induce an evil opinion of Suson in the minds of people who hold to normal notions of morality.

170.   The evil opinion would be induced by the implication that Suson was personally profiting from a great national tragedy which would hinder him in his business of running the Ground Zero Museum Workshop.

171.   Wilson, in sending the email A-1 Hosting, acted with malice in that he knew the statement was false but chose to send it anyway as a means of harming Suson.

172.   Wilson desired to harm Suson with false, defamatory statements because Suson would not let Wilson act as the official spokesperson for GZM.

173.   Wilson further desired to harm Suson as a means of forcing Suson to relinquish the copyright to the shopping cart and donation websites which were properly held and controlled by Suson as Executive Director of GZM.

174.   On or about September 13, 2009, Wilson sent an email to an unknown number of third parties
       stating that Suson was using the donations made to GZM for gambling purposes.

175.   This email was intended to induce an evil opinion of Suson in the minds of people who hold to
       normal notions of morality.

176.   The evil opinion intended to be induced regarding Suson was one that charges Suson with
       criminal conduct in state or federal prison as using donations from a non-profit for gambling
       purposes is a crime.

177.   Wilson, in sending the email to an unknown number of third persons, acted with malice in that
       he knew the statement was false but chose to send it anyway as a means of harming Suson.

178.   Wilson desired to harm Suson with false, defamatory statements because Suson would not let
       Wilson act as the official spokesperson for GZM.

179.   Wilson further desired to harm Suson as a means of forcing Suson to relinquish the copyright to
       the shopping cart and donation websites which were properly held and controlled by Suson as
       Executive Director of GZM.

180.   GZM was harmed by Wilson's false and defamatory statements made with malice regarding
       Suson as Executive Director of GZM and regarding GZM itself. The reputation of GZM was
       harmed, in that the false and defamatory statements have led to a decrease in donations to GZM.
       GZM was further harmed by the false and defamatory statements made with malice in that A-1
       Hosting ceased donating website hosting services to GZM based on the e-mail sent by Wilson.

### Count Six
### Tortious Interference in a Business Relationship

181.   Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 107 of the Complaint.

182.   Wilson was aware of the business relationship between GZM and A-1 Hosting in that he recommended and leveraged A-1 to host the GZM website.

183.   With knowledge that this was substantially certain to be the result of his actions, Wilson induced A-1 Hosting to no longer donate hosting services to GZM.

184.   Wilson induced A-1 Hosting to no longer donate hosting services to GZM by ordering them to no longer provide such services in his email of August 10, 2009.

185.   Wilson further induced A-1 Hosting to no longer donate website hosting services by falsely claiming that GZM was not a 501(c)(3) organization that would entitle it to donated services.

186.   In ordering A-1 to no longer donate hosting services and falsely claiming that GZM was not a 501(c)(3) organization, Wilson acted without reasonable justification, privilege or excuse.

187.   As a result of Wilson's actions, the business relationship between A-1 Hosting and GZM was severed.

188.   As a result of this severing, GZM was forced to locate another website hosting service at short notice.

189.    As a result of the severing, and Wilson's defaming of GZM, A-1 Hosting did not cooperate in a smooth transfer of the GZM website files from A-1 to the new website hosting service.

190.   GZM was damaged by Wilson's interference in its business relationship with A-1 in that the GZM website was not available on the worldwide web for viewing by the general public.  This failure of availability of the website led to a loss of ticket sales, Museum shop sales and donations to GZM.  This loss of availability led to decreased rankings in search engines.

## Count Seven

### Intentional Infliction of Emotional Distress

191. Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 106 of the Complaint.

192. Wilson on numerous occasion made false, defamatory statements regarding Suson in order to harass Suson, incuding but not limited to falsely claiming he gambles with the money donated to GZM, and that he was trying to personally profit from September 11, 2001.

193. Wilson has induced A-1 hosting to harass and demean Suson on numerous occasion.

194. 'Wilson has created websites to defame and harass Suson including but not limited to "cam-scam.com" and a false Myspace page.

195. Wilson's actions were made intentionally and with the knowledge that they would result in severe emotional distress to Suson.

196. These actions were the direct cause of the emotional distress sustained by Suson.

197. Defendant's conduct exceeded all bounds usually tolerated by a decent society and was of a nature especially calculated to cause the emotional distress it did cause.

198. Plaintiff Suson has had to seek mental health counseling to deal with the stress as a result of being harassed by Wilson. Wilson has also caused Suson's Post Traumatic Stress Disorder (PTSD) to resurface.

### REQUEST FOR INJUNCTIVE RELIEF

199. Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 170 of the Complaint.

200.    Plaintiffs respectfully request that this Court grant it temporary and a permanent injunction restraining and enjoining Defendant Wilson, any agent, representative, successor, assignee or employee from:

     a.   Asserting a copyright to any individual web pages or the GZM website as a whole;

     b.   Damaging the GZM website by deleting files or inserting redirect commands;

     c.   Making any defamatory statements regarding Suson or GZM or creating any websites to

do so;

     d.   Removing the website cam-scam.com from its current host, rendering it unviewable on the world wide web;

     e.   Refraining from all contact and communication with GZM or Suson.

201.    Plaintiffs will suffer irreparable harm if an injunction is not granted. The harm to GZM and Suson is actual and immediate. GZM continues to lose money every time Wilson destroys, hides or redirects the disputed web pages. The reputation of GZM will be harmed by the continued malicious acts of Wilson. As a non-profit institution, GZM depends on its reputation for its continued existence. Without a good reputation, GZM will cease to exist. Suson, himself, will suffer irreparable harm by the continued malicious acts of Wilson in that he will be unable to continue in his chosen profession as either an actor or the Director of GZM.

202.    Suson will also suffer irrepprable harm as the continued, irrational actions of Wilson to harrass Suson has put Suson in fear of safety and physical well-being.

203.    GZM will suffer irreparable harm as the continued, irrational actions of Wilson put the safety of the Museum and its patrons at risk.

204.   Plaintiffs have a strong likelihood of success on the merits at trial.  The malicious acts of Wilson are well-documented by Wilson himself.  He offers no excuse or justification of his malicious acts other than an assertion of copyright over certain web pages of the GZM website as whole. The law does not recognize self-help in a copyright action.  Given that there is no justification or excuse for Wilson's malicious actions against GZM and Suson, individually, the Plaintiffs are likely to prevail at trial.

205.   The Defendant will suffer no harm in the event of an injunction in this matter.  He will only be enjoined from continuing his malicious acts against GZM and Suson.  He earns no profit or other item of value from these malicious acts.  As he gains nothing from the continued acts, an injunction will not harm him.

206.   Plaintiffs will suffer grave harm if the injunction is not issued.  Wilson, despite the Cease and Desist letter has refused to return the codes to the disputed web pages.  He continues to defame both GZM and Suson to others, going so far as to create a website dedicated to the destruction of the reputation of Suson.  Wilson's actions are deliberate and malicious with the clear intent to harm Suson.  If not enjoined, Wilson will continue to act maliciously to harm Suson and GZM.

207.   As Defendant Wilson will suffer no harm from the granting of an injunction, and GZM and Suson will suffer immediate, actual grave harm from Wilson's continued malicious acts, equities dictate that an injunction in favor of GZM and Suson be granted.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Gary Marlon Suson and Ground Zero Museum Workshop respectfully request that this Court:

28

a.  Enter a judgment in favor of Plaintiffs and against Defendant that the copyright to the GZM website and all of its component pages are properly held by GZM;

b.  Grant a preliminary and permanent injunction restraining and enjoining Defendant Wilson, any agent, representative, successor, assignee or employee  from:

      i.  Asserting a copyright to any individual web pages or the GZM website as a whole;

      ii.  Damaging the GZM website by deleting files or inserting redirect commands;

      iii.  Making any defamatory statements regarding Suson or GZM, including the creation of any websites;

      iv.  Removing the website cam-scam.com from its current host, rendering it unviewable on the world wide web;

      v.  Communicating with or contacting GZM or Suson in any way.

c.  Enter judgment in favor of Plaintiff and against Defendant for an award of statutory damages of no less than $150,000 per copyrighted work as a result of Defendant's' willful infringement of GZM's copyrights;

d.  Enter a judgment in favor of Plaintiffs and against Defendant for circumvention of copyright protection systems;

e.  Enter a judgment against Defendant and in favor of Plaintiffs for compensatory damages for defamation, tortious interference with a business relationship and intentional infliction of emotional distress;

f.  Enter a judgment against Defendant and in favor of Plaintiffs for punitive damages for defamation, tortious interference with a business relationship and intentional infliction of emotional distress;

g.  Enter an award of the costs of this action, including reasonable attorneys' fees, pursuant to 17

U.S.C. § 505 and other applicable laws;

h.  Enter judgment against Defendants and in favor of Plaintiffs for prejudgment interest, costs and

attorneys' fees; and

i.  Grant Plaintiffs such other and further relief in law or in equity to which they may be entitled.

Respectfully submitted,

Elizabeth Pugliese, Esq.
Bar No. 17684
18173 Stags Leap Terr.
Germantown, MD 20874
Telephone:  703-231-0884
Email:  elizabethp@ep-lawyer.com
Counsel for Plaintiffs Gary Marlon Suson and
Ground Zero Museum Workshop