UNITED STATES DISTRICT COURT FOR
DISTRICT OF MARYLAND
SOUTHERN DISTRICT

GROUND ZERO MUSEUM
WORKSHOP, et al.                                    :

    Plaintiffs,                                    :

           v.                            : Civil Case No: DKC-09-3288

WILLIAM WILSON                                    :

    Defendant.                                    :

## ANSWER TO COMPLAINT & COUNTERCLAIM

COMES NOW, the Defendant, William Wilson, by and through his undersigned counsel,

Sterling G. Mead, Esquire, and in answer to the Complaint states as follows:

### SPECIFIC RESPONSES TO THE ALLEGATIONS IN THE COMPLAINT

1.     The Defendant denies the allegations in paragraph one of the Complaint.

2.     The Defendant is without information to either admit or deny the allegations in paragraph two of

the Complaint.

3.     The Defendant admits the allegation in paragraph three of the Complaint.

4.     The Defendant denies the allegations in paragraph four of the Complaint as to the jurisdiction of

this Court over this particular action but otherwise admits the general assertions of jurisdiction as

they relate to generic cases.

5.     The Defendant denies the allegations in paragraph five of the Complaint.

6.     The Defendant denies the allegations in paragraph six of the Complaint.

7.     The Defendant admits the allegation in paragraph seven of the Complaint.

8.      The Defendant admits the allegation in paragraph eight of the Complaint as to Defendant's residence and business being located in this District, but otherwise denies the allegations in this paragraph as they relate to personal jurisdiction, tortuous acts and harm alleged to derive therefrom.

9.      The Defendant is without information to either admit or deny the allegations in paragraph nine of the Complaint.

10.     The Defendant is without information to either admit or deny the allegations in paragraph ten of the Complaint.

11.     The Defendant is without information to either admit or deny the allegations in paragraph eleven of the Complaint.

12.     The Defendant is without information to either admit or deny the allegations in paragraph twelve of the Complaint.

13.     The Defendant denies the allegations in paragraph thirteen of the Complaint.

14.     The Defendant denies the allegations in paragraph fourteen of the Complaint.

15.     The Defendant denies the allegations in paragraph fifteen of the Complaint.

16.     The Defendant denies the allegations in paragraph sixteen of the Complaint.

17.     Defendant denies the allegations in paragraph seventeen of the Complaint.

18.     Defendant admits the allegations in paragraph eighteen of the Complaint.

19.     Defendant denies the allegations in paragraph nineteen of the Complaint.

20.     Defendant denies the allegations in paragraph twenty of the Complaint.

21.     Defendant admits only to that portion of the allegations in paragraph twenty-one of the Complaint relating to suggesting A-1 Hosting Services as a new host.

22.     Defendant admits the allegations in the first sentence of paragraph twenty-two of the Complaint, but denies the allegations in the second sentence of paragraph twenty-two of the Complaint.

23.     Defendant admits the allegations in paragraph twenty-three of the Complaint, but takes exception to the notion of agreeing to become a "permanent" sponsor.

24.     Defendant denies the allegations in paragraph twenty-four of the Complaint.

25.     Defendant admits the allegations in paragraph twenty-five of the Complaint.

26.     Defendant admits only to that portion of the allegations in paragraph twenty-six of the Complaint relating to Defendant designing the donations page and Defendant's use of certain images supplied by Suson.

27.     Defendant admits the allegations in paragraph twenty-seven of the Complaint, only to the extent that the allegations refer to the "donations" page being written and designed by Wilson.

28.     The Defendant is without information to either admit or deny the allegations in paragraph twenty-eight of the Complaint.

29.     The Defendant is without information to either admit or deny the allegations in paragraph twenty-nine of the Complaint.

30.     Defendant admits only that GZM provided a tax deduction receipt for $9,900 to Wilson in the spring of 2009 and denies all other allegations in paragraph thirty of the Complaint.

31.     Defendant denies the allegations in paragraph thirty-one of the Complaint.

32.     The Defendant is without information to either admit or deny the allegations in paragraph thirty-two of the Complaint.

33.     With respect to the allegations in paragraph thirty-three of the Complaint: Defendant is without information to either admit or deny the allegations in the first sentence of paragraph thirty-three

34.     Defendant denies the allegations in paragraph thirty-four of the Complaint.

35.     Defendant denies the allegations in paragraph thirty-five of the Complaint.

36.     Defendant admits only to that portion of the allegations in paragraph thirty-six of the Complaint concerning Wilson sending an email to Suson terminating Wilson's services for GZM on or about August 10, 2009.

37.     Defendant denies the allegations in paragraph thirty-seven of the Complaint.

38.     Defendant denies the allegations in paragraph thirty-eight of the Complaint.

39.     Defendant is without information to either admit or deny the allegations in paragraph thirty-nine of the Complaint.

40.     With respect to the allegations in paragraph forty of the Complaint, Defendant denies that Wilson never had control over the domain name for the GZM website, whether "groundzeromuseumworkshop.com" or "www.groundzeromuseum.com" or otherwise, but admits that Wilson never had ownership of the domain name for the GZM website.

41.     Defendant denies the allegations in paragraph forty-one of the Complaint.

42.     Defendant denies the allegations in paragraph forty-two of the Complaint.

43.     Defendant denies the allegations in paragraph forty-three of the Complaint.

44.     Defendant denies the allegations in paragraph forty-four of the Complaint.

45.     Defendant denies the allegations in paragraph forty-five of the Complaint.

46.     Defendant denies the allegations in paragraph forty-six of the Complaint.

47.     Defendant denies the allegations in paragraph forty-seven of the Complaint.

48.     With respect to the allegations in paragraph forty-eight of the Complaint, Defendant admits only that to access the website files on the A-1 Hosting server a user name and password was required and denies all other allegations.

49.     Defendant denies the allegations in paragraph forty-nine of the Complaint.

50.     Defendant denies the allegations in paragraph fifty of the Complaint.

51.     Defendant denies the allegations in paragraph fifty-one of the Complaint.

52.     Defendant denies the allegations in paragraph fifty-two of the Complaint.

53.     Defendant is without information to either admit or deny the allegations in paragraph fifty-three of the Complaint.

54.     Defendant denies the allegations in paragraph fifty-four of the Complaint.

55.     The Defendant is without information to either admit or deny the allegations in paragraph fifty-five of the Complaint, as Defendant simply does not recall making such a statement.

56.     Defendant denies the allegations in paragraph fifty-six of the Complaint.

57.     Defendant denies the allegations in paragraph fifty-seven of the Complaint.

58.     The Defendant is without information to either admit or deny the allegations in paragraph fifty-eight of the Complaint.

59.   With respect to paragraph fifty-nine of the Complaint: Defendant denies the premise of the allegation that the GZM website, in its entirety, was in need of restoration; Defendant admits Wilson agreed to replace GZM's then current shopping cart page with Wilson's shopping cart page services but with the understanding that doing so would resolve all disputes between Defendant and Plaintiffs; Defendant admits to the remaining allegations in this paragraph.

60.   Defendant admits the allegations in paragraph sixty of the Complaint but only to the extent that the restoring of the GZM website consisted of replacing the then current GZM shopping cart page with Wilson's shopping cart page and services.

61.   Defendant admits the allegations in paragraph sixty-one of the Complaint.

62.   Defendant admits the allegations in paragraph sixty-two of the Complaint.

63.   Defendant denies the allegations in paragraph sixty-three of the Complaint.

64.   Defendant denies the allegations in paragraph sixty-four of the Complaint.

65.   Defendant denies the allegations in paragraph sixty-five of the Complaint.

66.   Defendant denies the allegations in paragraph sixty-six of the Complaint.

67.   Defendant admits the allegations in paragraph sixty-seven of the Complaint.

68.   The Defendant is without information to either admit or deny the allegations in paragraph sixty-eight of the Complaint.

69.   Defendant denies the allegations in paragraph sixty-nine of the Complaint.

70.   Defendant denies the allegations in paragraph seventy of the Complaint.

71.   Defendant denies the allegations in paragraph seventy-one of the Complaint.

72.   The Defendant is without information to either admit or deny the allegations in paragraph seventy-two of the Complaint.

73.     The Defendant is without information to either admit or deny the allegations in paragraph seventy-three of the Complaint.

74.     The Defendant is without information to either admit or deny the allegations in paragraph seventy-four of the Complaint.

75.     The Defendant is without information to either admit or deny the allegations in paragraph seventy-five of the Complaint.

76.     The Defendant is without information to either admit or deny the allegations in paragraph seventy-six of the Complaint.

77.     The Defendant is without information to either admit or deny the allegations in paragraph seventy-seven of the Complaint.

78.     The Defendant is without information to either admit or deny the allegations in paragraph seventy-eight of the Complaint.

79.     Defendant denies the allegations in paragraph seventy-nine of the Complaint.

80.     Defendant denies the allegations in paragraph eighty of the Complaint.

81.     The Defendant is without information to either admit or deny the allegations in paragraph eighty-one of the Complaint.

82.     Defendant denies the allegations in paragraph eighty-two of the Complaint.

83.     Defendant denies the allegations in paragraph eighty-three of the Complaint.

84.     Defendant denies the allegations in paragraph eighty-four of the Complaint.

85.     Defendant denies the allegations in paragraph eighty-five of the Complaint.

86.     Defendant cannot understand the allegations in paragraph eighty-six of the Complaint as they are incomprehensible, and therefore Defendant denies all allegations in this paragraph.

87.     Defendant denies the allegations in paragraph eighty-seven of the Complaint, if by "he" the allegation is meant against the Defendant; otherwise Defendant is without information to either admit or deny the allegations in this paragraph.

88.     Defendant denies the allegations in paragraph eighty-eight of the Complaint.

89.     The Defendant is without information to either admit or deny the allegations in paragraph eighty-nine of the Complaint.

90.     Defendant denies the allegations in paragraph ninety of the Complaint.

91.     Defendant admits the allegations in paragraph ninety-one of the Complaint to the extent that Wilson was aware of the civil action between Suson and the New York Post ("Post Case"), that Wilson did proofread certain documents related to the Post Case at Suson's request, and that Wilson discussed with Suson issues related to the Post Case at Suson's requests, but denies that Wilson was acting as Suson's confidante at any time.

92.     Defendant denies the allegations in paragraph ninety-two of the Complaint.

93.     Defendant denies the allegations in paragraph ninety-three of the Complaint.

94.     Defendant denies the allegations in paragraph ninety-four of the Complaint.

95.     Defendant denies the allegations in paragraph ninety-five of the Complaint.

96.     Defendant admits the allegations in paragraph ninety-six of the Complaint.

97.     Defendant admits the allegations in paragraph ninety-seven of the Complaint.

98.     Defendant admits that Wilson posted a website at **www.cam-scam.com** on or about November 20, 2009 but denies the remaining allegations in paragraph ninety-eight of the Complaint.

99.    Defendant admits that Wilson alleges the website at **www.cam-scam.com** is solely for educational purposes but denies the remaining allegations in paragraph ninety-nine of the Complaint.

100.   Defendant admits the allegations in paragraph one hundred of the Complaint, insofar as the website located at **www.cam-scam.com** contained articles about Suson.

101.   Defendant denies the allegations in paragraph one hundred one of the Complaint.

102.   Defendant denies the allegations in paragraph one hundred two of the Complaint.

103.   Defendant denies the allegations in paragraph one hundred three of the Complaint.

104.   Defendant denies the allegations in paragraph one hundred four of the Complaint.

105.   Defendant denies the allegations in paragraph one hundred five of the Complaint.

106.   Defendant denies the allegations in paragraph one hundred six of the Complaint.

107.   The Defendant is without information to either admit or deny the allegations in paragraph one hundred seven of the Complaint.

108.   No response is required to paragraph one hundred eight of the Complaint.

109.   The Defendant is without information to either admit or deny the allegations in paragraph one hundred nine of the Complaint.

110.   Defendant denies the allegations in paragraph one hundred ten of the Complaint.

111.   Defendant denies the allegations in paragraph one hundred eleven of the Complaint.

112.   Defendant denies the allegations in paragraph one hundred twelve of the Complaint insofar as they relate to any copyrightable subject matter authored by Wilson and Defendant is without information to either admit or deny the remaining allegations.

113.   Defendant denies the allegations in paragraph one hundred thirteen of the Complaint.

114.   Defendant denies the allegations in paragraph one hundred fourteen of the Complaint.

115.   Defendant denies the allegations in paragraph one hundred fifteen of the Complaint.

116.   Defendant denies the allegations in paragraph one hundred sixteen of the Complaint.

117.   Defendant denies the allegations in paragraph one hundred seventeen of the Complaint.

118.   No response is required to paragraph one hundred eighteen of the Complaint.

119.   Defendant is without information to either admit or deny the allegations in paragraph one hundred nineteen of the Complaint.

120.   Defendant is without information to either admit or deny the allegations in paragraph one hundred twenty of the Complaint.

121.   Defendant denies the allegations in paragraph one hundred twenty-one of the Complaint.

122.   Defendant denies the allegations in paragraph one hundred twenty-two of the Complaint.

123.   Defendant denies the allegations in paragraph one hundred twenty-three of the Complaint.

124.   No response is required to paragraph one hundred twenty-four of the Complaint.

125.   Defendant denies the allegations in paragraph one hundred twenty-five of the Complaint insofar as they relate to any copyrightable subject matter authored by Wilson and Defendant is without information to either admit or deny the remaining allegations.

126.   Defendant denies the allegations in paragraph one hundred twenty-six of the Complaint.

127.   Defendant denies the allegations in paragraph one hundred twenty-seven of the Complaint.

128.   Defendant denies the allegations in paragraph one hundred twenty-eight of the Complaint.

129.   Defendant denies the allegations in paragraph one hundred twenty-nine of the Complaint.

130.   No response is required to paragraph one hundred thirty of the Complaint.

131.   Defendant denies the allegations in paragraph one hundred thirty-one of the Complaint.

132.    Defendant is without information to either admit or deny the allegations in paragraph one hundred thirty-two of the Complaint relating to an email sent to A-1 Hosting insofar is Defendant cannot recall sending such an email; and Defendant is without information to either admit or deny the remaining allegations.

133.    Defendant denies the allegations in paragraph one hundred thirty-three of the Complaint.

134.    Defendant denies the allegations in paragraph one hundred thirty-four of the Complaint.

135.    Defendant denies the allegations in paragraph one hundred thirty-five of the Complaint.

136.    Defendant denies the allegations in paragraph one hundred thirty-six of the Complaint.

137.    Defendant denies the allegations in paragraph one hundred thirty-seven of the Complaint.

138.    Defendant denies the allegations in paragraph one hundred thirty-eight of the Complaint.

139.    Defendant denies the allegations in paragraph one hundred thirty-nine of the Complaint.

140.    The allegations of paragraph one hundred forty of the Complaint are incomprehensible and therefore Defendant denies the allegations in paragraph one hundred forty of the Complaint.

141.    Defendant denies the allegations in paragraph one hundred forty-one of the Complaint.

142.    Defendant denies the allegations in paragraph one hundred forty-two of the Complaint.

143.    Defendant denies the allegations in paragraph one hundred forty-three of the Complaint.

144.    Defendant admits the allegations in paragraph one hundred forty-four of the Complaint.

145.    To the extent that "The website" refers to the one located at www.cam-scam.com, Defendant admits the allegations in paragraph one hundred forty-five of the Complaint; otherwise, Defendant is without information to either admit or deny the allegations in paragraph one hundred forty-five of the Complaint.

146.    Defendant denies the allegations in paragraph one hundred forty-six of the Complaint.

147.    Defendant denies the allegations in paragraph one hundred forty-seven of the Complaint.

148.    Defendant denies the allegations in paragraph one hundred forty-eight of the Complaint.

149.    Defendant denies the allegations in paragraph one hundred forty-nine of the Complaint.

150.    Defendant denies the allegations in paragraph one hundred fifty of the Complaint.

151.    Defendant denies the allegations in paragraph one hundred fifty-one of the Complaint.

152.    Defendant denies the allegations in paragraph one hundred fifty-two of the Complaint.

153.    Defendant denies the allegations in paragraph one hundred fifty-three of the Complaint.

154.    Defendant denies the allegations in paragraph one hundred fifty-four of the Complaint.

155.    Defendant denies the allegations in paragraph one hundred fifty-five of the Complaint.

156.    Defendant denies the allegations in paragraph one hundred fifty-six of the Complaint.

157.    Defendant denies the allegations in paragraph one hundred fifty-seven of the Complaint.

158.    Defendant denies the allegations in paragraph one hundred fifty-eight of the Complaint.

159.    No response is required to paragraph one hundred fifty-nine of the Complaint.

160.    Defendant denies the allegations in paragraph one hundred sixty of the Complaint.

161.    Defendant is without information to either admit or deny the allegations in paragraph one hundred sixty-one of the Complaint, insofar as he cannot recall sending any email making such statement.

162.    Defendant denies the allegations in paragraph one hundred sixty-two of the Complaint.

163.    Defendant denies the allegations in paragraph one hundred sixty-three of the Complaint.

164.    Defendant denies the allegations in paragraph one hundred sixty-four of the Complaint.

165.    Defendant denies the allegations in paragraph one hundred sixty-five of the Complaint.

166.    Defendant denies the allegations in paragraph one hundred sixty-six of the Complaint.

167.    Defendant denies the allegations in paragraph one hundred sixty-seven of the Complaint.

168.    Defendant is without information to either admit or deny the allegations in paragraph one

hundred sixty-eight of the Complaint insofar as Defendant cannot recall sending such an email.

169.    Defendant denies the allegations in paragraph one hundred sixty-nine of the Complaint.

170.    Defendant denies the allegations in paragraph one hundred seventy of the Complaint.

171.    Defendant denies the allegations in paragraph one hundred seventy-one of the Complaint.

172.    Defendant denies the allegations in paragraph one hundred seventy-two of the Complaint.

173.    Defendant denies the allegations in paragraph one hundred seventy-three of the Complaint.

174.    Defendant denies the allegations in paragraph one hundred seventy-four of the Complaint.

175.    Defendant denies the allegations in paragraph one hundred seventy-five of the Complaint.

176.    Defendant denies the allegations in paragraph one hundred seventy-six of the Complaint.

177.    Defendant denies the allegations in paragraph one hundred seventy-seven of the Complaint.

178.    Defendant denies the allegations in paragraph one hundred seventy-eight of the Complaint.

179.    Defendant denies the allegations in paragraph one hundred seventy-nine of the Complaint.

180.    Defendant denies the allegations in paragraph one hundred eighty of the Complaint.

181.    No response is required to paragraph one hundred eighty-one of the Complaint.

182.    Defendant admits the allegations in paragraph one hundred eighty-two of the Complaint.

183.    Defendant denies the allegations in paragraph one hundred eighty-three of the Complaint.

184.    Defendant denies the allegations in paragraph one hundred eighty-four of the Complaint.

185.    Defendant denies the allegations in paragraph one hundred eighty-five of the Complaint.

186.    Defendant denies the allegations in paragraph one hundred eighty-six of the Complaint.

187.    Defendant denies the allegations in paragraph one hundred eighty-seven of the Complaint.

188.    Defendant denies the allegations in paragraph one hundred eighty-eight of the Complaint.

189.    Defendant denies the allegations in paragraph one hundred eighty-nine of the Complaint insofar as they relate to Wilson defaming GZM or anyone else or causing GZM to transfer the GZM website from A-1 Hosting and is without information to either admit or deny the remaining allegations.

190.    Defendant denies the allegations in paragraph one hundred ninety of the Complaint.

191.    No response is required to paragraph one hundred ninety-one of the Complaint.

192.    Defendant denies the allegations in paragraph one hundred ninety-two of the Complaint.

193.    Defendant denies the allegations in paragraph one hundred ninety-three of the Complaint.

194.    Defendant denies the allegations in paragraph one hundred ninety-four of the Complaint.

195.    Defendant denies the allegations in paragraph one hundred ninety-five of the Complaint.

196.    Defendant denies the allegations in paragraph one hundred ninety-six of the Complaint.

197.    Defendant denies the allegations in paragraph one hundred ninety-seven of the Complaint.

198.    Defendant denies the allegations in paragraph one hundred ninety-eight of the Complaint.

199.    No response is required to paragraph one hundred ninety-nine of the Complaint.

200.    Defendant denies all of the allegations and prayers for relief found in paragraphs two hundred through two hundred seven of the Complaint.

### GENERAL DENIAL OF LIABILITY

201.    Defendant generally denies any and all liability alleged by the Plaintiff and requests that this Court deny any and all relief sought therefore.

202.    Defendant hereby denies that Wilson violated 17 USC § 1201 (circumvention of copyright protection systems) as stated in Count I of the Complaint. Wilson did not circumvent any

203.   Defendant asserts that Plaintiff has no standing to claim and this court has no subject matter

jurisdiction over the copyright infringement allegations in Count II because Plaintiff has not

registered nor alleged that it has applied to register any copyright in the GMZ website as required

by 17 USC 411.  Defendant further asserts that Plaintiff's allegations in Count II do not plead

any conduct that violates any of the exclusive rights of a copyright owner under the U.S.

Copyright Act.  Defendant expressly denies entering into a work made for hire agreement with

either Plaintiff in connection with subject matter authored by Wilson for the GZM website or for

204.   Defendant hereby denies that Wilson converted anything owned by the Plaintiffs or either of

them as alleged in Count III of the Complaint.  Defendant only merely terminated Wilson's

donated services and license to use Wilson's customized web pages and replaced those web

pages with the web pages used by GZM and Suson prior to Wilson's involvement with the GZM

website, which he was entitled to do.

205.   Defendant hereby denies that he defamed either of the Plaintiffs as alleged in Counts IV and V of

the Complaint.  The allegations in this regard as to Suson were that two emails were sent to the

web hosting company claiming that Suson was using the tragedy of September 11th for his own

profit and that he was gambling with the donations made to GZM.  Moreover, allegations are

made that the Defendant created links via a website and MySpace account to articles written

about Suson by the New York Post.  Plaintiffs sued the New York Post over these statements for

defamation, and lost.  All of the statements made by the Defendant were true, and were

otherwise not defamatory in nature but merely an expression of Wilson's opinion or his comment

on news stories previously published and available on the web, and the Plaintiffs did not suffer

any harm therefrom.

206.   There is no nexus between the web hosting company deciding not to do business with the Plaintiff and the alleged statements made by the Defendant about the Plaintiff to constitute a tortious interference with contractual relations as alleged in Count VI of the Complaint.  The web hosting company refused to continue to donate free services to the Plaintiff because the Plaintiffs were unable to provide satisfactory documentation accounting for the Plaintiffs' use of the donations made to GZM.

207.   The Defendant did not intentionally inflict emotional distress on the Plaintiffs as alleged in Count VII of the Complaint.  None of the remarks made by the Defendant were defamatory and the Plaintiffs fail to state a separate cause of action here other than to allege defamatory statements under the label of infliction of emotional distress.

208.   The request for temporary injunctive relief should be denied because the Defendant has agreed that during the pendency of this lawsuit the Defendant will not publish or cause to be published to the web or otherwise any information about the Plaintiffs.   The request for permanent injunctive relief should be denied for all the reasons set forth in this Answer.

## **AFFIRMATIVE DEFENSES**

209.   The Defendant makes the following affirmative defenses to the allegations raised in the Complaint:

 a. Ground Zero Museum Workshop is not an entity in New York or any other state, and lacks the capacity to sue in this Court and therefore any and all claims alleged by Ground Zero Museum Workshop should be dismissed with prejudice.

 b. The court has no subject matter jurisdiction over Plaintiffs' anti-circumvention or copyright infringement counts because Plaintiff has no copyright registration;

c.    The Complaint fails to state a claim by against Defendants upon which relief can be granted;

d.    Plaintiffs' claims are barred by statute under the "innocent infringer" provisions;

e.    Plaintiffs' alleged copyright is invalid or unenforceable;

f.    Defendant is protected from liability under the fair use doctrine;

g.    Plaintiffs' claims are barred by the copyright misuse doctrine;

h.    Plaintiffs' claims are barred by release, waiver, and/or estoppel;

i.    Plaintiffs' claims are barred by accord and satisfaction;

j.    Plaintiffs' claims are barred by arbitration and award;

k.    Plaintiffs' claims are barred by duress;

l.    Plaintiffs' claims are barred by failure of consideration;

m.    Plaintiffs' claims are barred by Plaintiffs' fraud;

n.    Plaintiffs' claims are barred due to Plaintiff's unclean hands;

o.    Plaintiffs suffered no damages as a result of the allegations set forth in the complaint;

p.    Plaintiffs have failed to mitigate damages, if any;

q.    Plaintiffs' claims are barred by a total or qualified privilege or immunity;

r.    Plaintiffs' claims are barred by Plaintiffs' illegal conduct;

s.    Plaintiffs' claims are barred by res judicata;

t.    Plaintiffs' claims are barred by collateral estoppels;

u.    Plaintiffs' claims are barred by the statute of frauds;

v.    Plaintiffs' claims are barred by the applicable statute of limitations;

w.    The damages claimed by Plaintiffs are not a result of the acts or omissions of Defendant.

x.      The Defendant is entitled to offset of any damages as and for the value of the services donated by the Defendant to the Plaintiff, which were based on false representations made by the Plaintiffs to the Defendant.

WHEREFORE, having fully answered the Complaint, Defendant request that this Court dismiss the Complaint; deny the relief requested by Plaintiffs; and assess all costs, including attorneys' fees, against Plaintiffs.

## JURY DEMAND

Defendant hereby requests a trial by jury as to each of the Plaintiff's claims.

## COMPULSORY COUNTERCLAIM

210.     Defendant and Counter-Claimant hereby counterclaims against Plaintiffs and Counter-Defendants, Gary Marlon Suson and Committee for Ground Zero Museum Workshop, Inc. and in support thereof states as follows:

Parties

211.     The Defendant and Counter-Claimant, William Wilson is (hereafter "Wilson") an individual United States citizen, residing at 721 Bright Meadow Road, Gaithersburg, Maryland 20878.

212.     The Plaintiff and Counter-Defendant, Gary Marlon Suson, (hereafter "Suson") is an individual United States citizen, residing in the state of New York.  His principal place of business is 420 West 14th Street, New York, NY 10014.

213.      The Plaintiff and Counter-Defendant, Committee for Ground Zero Museum Workshop,

Inc.  (hereafter "GZM") is an IRS 501( c )(3) organization with its principal place of business

located at 420 West 14th Street, New York, NY 10014.

### Jurisdiction and Venue

214.      This Court has subject matter jurisdiction over the counterclaim insofar as this Court has

diversity jurisdiction over the Complaint and the amount in controversy of the allegations in the

Complaint exceed $75,000.00.

215.      Venue is properly in this Court as the Plaintiff's Complaint was filed in this Court and the

work that forms the basis of the counterclaim occurred in Maryland.

216.      This Court has personal jurisdiction inasmuch as the Plaintiff/Counter-Defendant has

submitted to personal jurisdiction by filing the Complaint in this Court.

### Pertinent Facts

217.      On or about June 2007, Defendant visited the Ground Zero Museum in New York City

("GZM") and met Gary Suson ("Suson").  Defendant was moved by the images depicting the

aftermath of the September 11, 2001 terrorist attack on the Twin Towers in New York ("911

Attack") on display in the museum and with Suson's comments about GZM being a non-profit

organization and with Suson's comments about his personal efforts to help raise money for the

Fire Department of New York Widows and Orphans Fund and other charitable organizations

related to the 911 Attack.  Suson represented to Defendant that he had started the GZM as a non-

profit, charitable organization back in 2005.  As a direct result of Defendant's visit to GZM and

Suson's comments, Defendant offered to assist Suson with website related services to help

support Suson's stated non-profit and charitable relief cause.

218.   On or about July 2007 Defendant received a telephone call from Suson following up on Defendant's offer and seeking a donation of services from Defendant.  Suson expressly represented that GZM and he personally had very little money to support the charitable cause and that Defendant's willingness to donate services would be helpful.

219.   On or about July 2007, in direct reliance upon Suson's representations that GZM had little cash, was a non-profit organization and Suson's representations that Suson was not taking a salary or otherwise personally profiting from GZM activities or Suson's other personal fundraising efforts, Defendant agreed promptly to donate certain services through Defendant's business known as CartDesigns.

220.   Defendant's CartDesigns business provides "secure shopping cart" services for websites that enables website owners to offer items for sale via a page or pages on the website.  Defendant's services involve providing internet merchants with a remotely hosted, customizable e-commerce shopping cart and secure SSL Gateway where their customers may pay for their products via credit or debit card, or check, using real-time or manual processing.  Defendant's typically charges $299.00 - $35,000 per year for similar services.

221.   Shortly after commencing services for GZM, Defendant began to offer additional services to GZM typically handled by a "webmaster" including editing html code on webpages and making other modifications and enhancements to the website.  Typically, Defendant would charge client's $150.00 - $500.00 per hour for similar services.

222.   In addition to other services, Defendant designed and configured a "donations" webpage that enabled GZM website visitors to make direct donations to GZM using Defendant's payment

223.    On or about August 2007, Defendant approached other service providers with whom Defendant

        had long-established business relations, sought and secured donations of in-kind services to

        further support the operation of GZM's website, including those of A-1 Hosting Services and

        Persits server software.  Typically, A-1 Hosting Services would charge client's $700.00 -

        $2500.00 per year for similar services, and Persits server software typically costs $700.00 or

        more per license.

224.    On or about November 2007, Defendant first learned that Suson and the GZM operation was the

        subject of numerous newspaper stories published by the New York Post which reported that

        GZM was not a legitimate charitable organization and that Suson was merely using GZM to

        dupe people into making donations that were not being used for charitable purposes, were not

        benefiting the widows and orphans fund, or any other related charitable purpose.  Suson,

        however, reassured Defendant, that all of the stories were lies and that Suson had filed suit

        against the New York Post claiming defamation.

225.    In direct reliance upon Suson's express representations that the New York Post stories were

        false, Defendant continued to believe Suson's side of the story and continued donating services.

226.    Even after Suson's lawsuit against the New York Post was dismissed as without merit on or

        about April 2008, Suson continued to represent to Defendant that the stories were lies, and

        Defendant continued to believe Suson based on Suson's express and passionate pleas and

        explanation that he was appealing the decision because it was wrongly decided.

227.   On or about June 2009 Suson wrongly accused Defendant of taking down the GZM website and informed Defendant that as a result GZM was losing $2,000 a day in revenue and/or donations. Shortly before, Suson had informed Defendant that GZM was receiving approximately $700 a day in revenue and/or donations.  When Defendant sought an explanation for this discrepancy, Suson refused to explain the difference and denied stating that GZM was receiving $2,000 a day in revenue and/or donations.

228.   Based on Suson's email communication to Defendant that GZM was losing $2,000 a day because the GZM website was not operating, GZM's annual receipts via the GZM website alone would be approximately $730,000.00, far in excess of what Suson had previously represented to Defendant.  This amount would be above and beyond corporate donations made to GZM by CNN of $15,000 and Barnes and Noble of $61,000 during the calendar year 2005.

229.   On or about August 2009 A-1 Hosting contacted Defendant to request documentation from GZM and Suson supporting the status of GZM as a charitable, non-profit organization and financial records, including GZM tax returns and other documentation of actual donations made by GZM to the widows and orphans fund and other charitable groups related to the 911 Attack.

230.   After numerous requests without response from GZM or Suson, on or about September 2009, after Defendant and A-1 Hosting Services threatened to cease donating services, GZM and Suson sent A-1 Hosting Services limited and questionable documentation to support the charitable nature of their operations amounting to a questionable business license issued by New York City, a copy of an IRS letter of determination stating that the IRS, based on the information provided in GZM's application, had granted GZM 501(c)(3) status as a non-profit, charitable organization as of December 28, 2009 – more than two years after Suson's initial express representation to

231.  Under Internal Revenue Service Code Section 301.6104(d) a tax-exempt organization must make its application for recognition of exemption and its annual information returns available for public inspection without charge at its principal, regional and district offices during regular business hours, and make each annual information return available for a period of 3 years beginning on the date the return is required to be filed (determined with regard to any extension of time for filing) or is actually filed, whichever is later.  At no time did GZM or Suson produce a copy of GZM's application for exemption or advise that the same was available at its principal office or any other office, nor did GZM or Suson provide copies of GZM's 990 federal tax returns or any other accounting of its operations and handling of sales revenue and donations received during the period of its operations even though Defendant and A-1 Hosting Services had expressly requested such documentation.

232.  On or about September 2009 Defendant terminated all services Defendant was performing in connection with the GZM website and requested that all links between the GZM website and Defendant's shopping cart page and services be removed.

233.  After GZM and/or Suson failed to remove the links from GZM's website to Defendant's shopping cart page and services that were hosted on Defendant's server, Defendant filed a take-down complaint with Google pursuant to the Digital Millennium Copyright Act ("DMCA") claiming that GZM and/or Suson was violating Defendant's copyrights in and to Defendant's

234.   On or about September 16, 2009 Defendant via email to counsel for GZM and Suson proposed to resolve the dispute over the links by offering to GZM and/or Suson the shopping catalog page and GZM customer database in exchange for GZM and/or Suson removing the shopping cart link and all other links to Defendant's shopping cart page and services hosted on Defendant's server under its cartdesign.com URL.

235.   On or about September 16, 2009 counsel for GZM and Suson sent an email to Defendant stating that all of Defendant's trademarks would be removed from the GZM website.


## COUNT I

### (Fraud)

236.   Defendant re-alleges and incorporates by reference all allegations set forth in paragraphs 217 through 235 of this Counterclaim.

237.   GZM, acting by and through Suson, and Suson, for his personal benefit, repeatedly and deceitfully misrepresented to Defendant material facts, including its purposes, GZM's charitable status, and GZM's actual financial condition, including its level of receipt of revenues from sales of merchandise, images and other 911 Attack memorabilia and its level of receipt of donations, and GZM's use of funds for operating expenses versus donations to the widows and orphans fund and/or other 911 Attack charitable organizations.

238.    Defendant acted in reliance upon GZM's and Suson's misrepresentations of these material facts when deciding to donate Defendant's services back in 2007 and on an ongoing basis up to and including all services donated through June 2009.

239.    GZM's and/or Suson's fraudulently induced Defendant to donate his services to GZM and/or Suson knowing that Defendant would not have donated his services if GZM and/or Suson had not made such false representations to Defendant.

240.    GZM and/or Suson had a duty to disclose the truth of its charitable status and charitable contributions to the widows and orphans fund and other 911 Attack charitable organizations, and deceitfully withheld such information from Defendant.

241.    As a direct result of GZM's and/or Suson's deceitful misrepresentations of material facts, Defendant suffered damages.

242.    GZM's and/or Suson's deceitful misrepresentations of materials facts were outrageous considering the tragedy of the 911 Attacks and the public outpouring of support for the 911 Attack widows and orphans, and GZM and/or Suson should be punished to deter GZM and/or Suson continuing such outrageous conduct and to deter others from similar conduct.

WHEREFORE, Defendant/Counter-Plaintiff requests judgment against Plaintiffs/Counter-Defendants as follows:

A.    For compensatory damages of $30,000.00.

B.    For punitive damages of no less than $1,000,000.00.

C.    For attorney's fees.

D.    For costs of suit.

E.    For such other and further relief as this Court may deem just and proper.

## COUNT II

### (Breach of Contract Implied In Fact)

243.    Defendant re-alleges and incorporates by reference all allegations set forth in paragraphs 217

through 235 of this Counterclaim.

244.    Defendant donated his services to GZM and/or Suson in exchange for GZM's and/or Suson's

representations and promises that virtually all of the funds received by GZM and/or Suson in

connection with GZM operations would be donated to the 911 Attack widows and orphan's fund

and/or other related charities.

245.    GZM's and/or Suson's failure to donate virtually all or even a substantial amount of the funds

it/they received in connection with GZM operations to the 911 Attack widows and orphans fund

or other related charities constitutes a failure of consideration and breach of its agreement with

Defendant.

246.    Defendant suffered damages directly related to the GZM's breach amounting to loss of income

attributable to Defendant's donated services.

WHEREFORE, Defendant/Counter-Plaintiff requests judgment against

Plaintiffs/Counter-Defendants as follows:

A.      For compensatory damages of $30,000.00.

C.      For attorney's fees.

D.      For costs of suit.

E.      For such other and further relief as this Court may deem just and proper.

## COUNT III

### (Quantum Meruit)

247.   Defendant re-alleges and incorporates by reference all allegations set forth in paragraphs 217

through 235 of this Counterclaim.

248.   GZM and/or Suson engaged Defendant's services with the implied understanding that if GZM

and/or Suson failed or refused to donate virtually all of the funds received in connection with

GZM's operations then Defendant would not waive or donate its services but would, on the

contrary, charge for the same at Defendant's usual and customary rates.

249.   GZM and/or Suson failed or refused to donate virtually all of the funds received in connection

with GZM's operations and therefore Defendant is entitle to receive just compensation for

services Defendant rendered.

WHEREFORE, Defendant/Counter-Plaintiff requests judgment against

Plaintiffs/Counter-Defendants as follows:

A.     For the value of services rendered amounting to $30,000.00.

C.     For attorney's fees.

D.     For costs of suit.

E.     For such other and further relief as this Court may deem just and proper.

## COUNT IV

### (Unjust Enrichment)

250.   Defendant re-alleges and incorporates by reference all allegations set forth in paragraphs 217

through 235 of this Counterclaim.

251.   Defendant's donation of services to GZM and/or Suson conferred a benefit upon GZM and/or

Suson, GZM and/or Suson appreciated and had knowledge of the benefit, and GZM and/or

Suson accepted the benefit under circumstances where GZM and/or Suson knew that Defendant

WHEREFORE, Defendant/Counter-Plaintiff requests judgment against Plaintiffs/Counter-Defendants as follows:

A.      For restitution of the value unjustly received amounting to $30,000.00.

C.      For attorney's fees.

D.      For costs of suit.

E.      For such other and further relief as this Court may deem just and proper.

## COUNT V

### (Breach of Contract)

252.    Defendant re-alleges and incorporates by reference all allegations set forth in paragraphs 217 through 235 of this Counterclaim.

253.    Even though counsel for GZM and Suson stated in an email to Defendant on or about September 2009 that all of Defendant's trademarks would be removed from the GZM website in exchange for Defendant's delivery of the catalog page designed by Defendant for the GZM website, the GZM website still displays Defendant's Cart Designs trademark and contains links to Defendant's website located at www.cartdesigns.com.

WHEREFORE, Defendant/Counter-Plaintiff requests judgment against Plaintiffs/Counter-Defendants as follows:

A.      For specific performance of the contract and removal of all of Defendant's trademarks from the GZM website, including all references to Cart Designs and all links to any page

or subpage that is or was hosted on Defendant's server under the domain cartdesign.com or any other domain name owned by Defendant.

B.      For attorney's fees.

C.      For costs of suit.

D.      For such other and further relief as this Court may deem just and proper.

## COUNT VI

### (Common Law Trademark Infringement, Passing-Off, Misappropriation)

254.    Defendant re-alleges and incorporates by reference all allegations set forth in paragraphs 217 through 235 of this Counterclaim.

255.    Even though counsel for GZM and Suson stated in an email to Defendant on or about September 2009 that all of Defendant's trademarks would be removed from the GZM website, the GZM website still displays Defendant's Cart Designs trademark and contains links to Defendant's website located at www.cartdesigns.com.

256.    Defendant is the sole owner of the trademark Cart Designs trademark for website shopping cart design and related webmaster services.

257.    GZM and/or Suson, by displaying, or allowing the displaying, of Defendant's Cart Designs trademark and link are infringing Defendant's trademark, passing-off of GZM website design as being that of Defendant's, misappropriating Defendant's goodwill associated with Defendant's Cart Designs mark, and damaging Defendant's reputation and goodwill.

258.    GZM's and/or Suson's infringing activity is intentional and willful.

        WHEREFORE, Defendant/Counter-Plaintiff requests judgment against Plaintiffs/Counter-Defendants as follows:

A.   Temporary and permanent injunction against GZM and Suson from displaying Defendant's Cart Designs trademark and for a temporary and permanent injunction against GZM and Suson from including any links from the GZM website at www.groundzeromuseum.com or any other domain name owned or controlled by GZM or Suson to Defendant's website located at www.cartdesigns.com or any other domain name owned or controlled by Defendant.

B.   For compensatory damages allowed by applicable law.

C.   For attorney's fees.

D.   For costs of suit.

E.   For such other and further relief as this Court may deem just and proper.

## COUNT VII

### (Misuse of Trade Secret)

259.   Defendant re-alleges and incorporates by reference all allegations set forth in paragraphs 217 through 235 of this Counterclaim.

260.   Defendant repeatedly informed GZM and/or Suson that Defendant's proprietary software code embedded in the catalog page Defendant designed for the GZM website to interface with Defendant's shopping cart page hosted on Defendant's server was confidential.

261.   Although Defendant authorized GZM and/or Suson to continue using the catalog page, including Defendant's confidential and proprietary software code, in connection with the GZM website, Defendant's authorization was subject to GZM and/or Suson the condition that Defendant's code be kept confidential at all times.

262.   GZM and/or Suson have breached Defendant's confidentiality condition and Defendant's confidential and proprietary software code embedded in the catalog page is no longer secure and is subject to disclosure to the public.

263.   Disclosure of Defendant's confidential and proprietary software code that is embedded in the GZM website catalog page will damage Defendant and his ability to compete.

WHEREFORE, Defendant/Counter-Plaintiff requests judgment against Plaintiffs/Counter-Defendants as follows:

A.   Temporary and permanent injunction against GZM and Suson from disclosing Defendant's confidential and proprietary software code.

B.   Termination of Defendant's authorization to use Defendant's confidential and proprietary software code in connection with the GZM website or any other website.

C.   For compensatory damages of up to such amount allowed by applicable law.

D.   For attorney's fees.

E.   For costs of suit.

F.   For such other and further relief as this Court may deem just and proper.

## COUNT VIII

### (Intentional Infliction of Emotional Distress)

264.   Defendant re-alleges and incorporates by reference all allegations set forth in paragraphs 217 through 235 of this Counterclaim.

265.    On or about August 2009, Suson intentionally and with malice contacted the Gaithersburg City police department and falsely reported that Defendant was a "hacker" and had "hacked" into the GZM website resulting in the Gaithersburg City police contacting Defendant and threatening to confiscate all of Defendant's computer equipment which would have severely impaired Defendant's ability to continue doing business.

266.    Suson's conduct in contacting the Gaithersburg City police was outrageous considering that Defendant had at all times been in possession of the user identification and password to access the GZM website, and considering further that Suson knew that the Defendant's co-habitant was an attorney at a prominent law firm and that the Defendant's co-habitant's computer equipment, which contained confidential information, would also be subject to confiscation by the Gaithersburg City police.

267.    As a direct result of Suson's outrageous conduct, Defendant suffered severe emotional distress, including loss of sleep, loss of appetite, and inability to focus on and conduct business as usual.

        WHEREFORE, Defendant/Counter-Plaintiff requests judgment against Plaintiffs/Counter-Defendants as follows:

A.      Temporary and permanent injunction against Suson from intentionally inflicting emotional distress on Defendant.

B.      For compensatory damages of up to such amount allowed by applicable law.

C.      Punitive damages sufficient to deter Suson from further similar outrageous conduct.

D.      For attorney's fees.

E.      For costs of suit.

F.      For such other and further relief as this Court may deem just and proper.

## <u>COUNT IX</u>

### <u>(Defamation)</u>

268.   Defendant re-alleges and incorporates by reference all allegations set forth in paragraphs 217

through 235 of this Counterclaim.

269.   Defendant's business involves high-level of security and trust among payment processing service

providers.

270.   On or about August 2009, Suson intentionally and with malice contacted the Gaithersburg City

police department and falsely reported that Defendant was a "hacker" and had "hacked" into the

GZM website resulting in the Gaithersburg City police contacting Defendant and threatening to

confiscate all of Defendant's computer equipment which would have severely impaired

Defendant's ability to continue doing business.

271.   Suson knew that his statements about Defendant were false.

272.   As a direct result of Suson's false and malicious comments to the Gaithersburg City police

Defendant's reputation was damaged.

WHEREFORE, Defendant/Counter-Plaintiff requests judgment against

Plaintiffs/Counter-Defendants as follows:

A.      Temporary and permanent injunction against Suson from defaming Defendant.

B.      For compensatory damages of up to such amount allowed by applicable law.

C.      Punitive damages sufficient to deter Suson from further similar outrageous conduct.

D.      For attorney's fees.

E.      For costs of suit.

F.      For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Law Office of Sterling G. Mead, LLC


_____/s/*Sterling G. Mead*_____
Sterling G. Mead #14703
105 South Washington Street
Rockville, Maryland 20850
240-453-9512
240-268-1400 fax
smead@mm-law.org
*Counsel for Defendant*
*William Wilson*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on February 16, 2010,  a copy of the foregoing Answer was served on Elizabeth Pugliese, Esq., Counsel for Plaintiffs, 18173 Stags Leap Terrace, Germantown, Maryland 20874, pursuant to Fed. R. Civ. P. 5(a) and Local Rule 102(1)( c ).


_____/s/*Sterling G. Mead*_____
Sterling G. Mead