IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| GROUND ZERO MUSEUM WORKSHOP, et al. | : | |
| v. | : | Civil Action No. DKC 09-3288 |
| WILLIAM WILSON | : | |
| | : | |

### MEMORANDUM OPINION

Presently pending and ready for review in this copyright infringement and breach of contract case is the motion of Plaintiffs Ground Zero Museum Workshop and Gary Marlon Suson to dismiss Defendant William Wilson's counterclaims (Paper 10). The issues are fully briefed and the court now rules, no hearing being deemed necessary.   Local Rule 105.6.   For the following reasons, Plaintiffs' motion to dismiss will be denied.

## I.  Background

Plaintiff Ground Zero Museum Workshop ("GZM") is an alleged IRS 501(c)(3) organization created under the laws of the state of New York and located at 420 West 14th Street, Floor 2, New York, New York, 10014.[1]   (Paper 1 ¶ 1; Paper 8 ¶ 213).   GZM

---

[1] The parties dispute the proper legal name of the 501(c)(3) organization that operates the Ground Zero Museum.   Plaintiffs allege that the registered 501(c)(3) entity is titled "Ground Zero Museum Workshop," while Defendant maintains that the entity is titled "Committee for Ground Zero Museum Workshop, Inc."   To avoid confusion, the court will refer to the entity as GZM.

opened as a museum in 2005 and exhibits photographs and artifacts from the aftermath of the attack on the World Trade Center buildings on September 11, 2001. (Paper 1 ¶ 9). Plaintiff Gary Marlon Suson is the executive director and founder of GZM. (*Id.* at ¶ 10; Paper 8 ¶ 212). Mr. Suson is an off-Broadway actor and photographer who personally took many of the photographs on display at GZM. (Paper 1 ¶ 11). He resides in New York. (*Id.* at ¶ 2). Defendant William Wilson resides and works in Gaithersburg, Maryland. (*Id.* at ¶ 3). Defendant operates a business called Cart Designs, which provides secure "shopping cart" services for websites that allow the site owner to offer items for sale through a remotely hosted, customizable e-commerce shopping cart and a secure SSL Gateway to allow customers to make purchases via the Internet using credit or debit cards. (Paper 8 ¶¶ 219-220).

Defendant visited GZM in 2007 and thereafter offered to assist Plaintiffs with some of the museum's website-related services. (Paper 1 ¶ 16; Paper 8 ¶¶ 217-218). Specifically, Defendant offered to create a shopping cart for the online store and to design and configure a donations webpage. (Paper 1 ¶ 16; Paper 8 ¶¶ 219, 222). Defendant also arranged for a web hosting company, A-1 Hosting Services, to donate website hosting services to GZM. (Paper 1 ¶¶ 21-23; Paper 8 ¶ 223).

The parties' relationship began to deteriorate in the summer of 2009. Plaintiffs allege that the problems began when Defendant posted an unauthorized response to derogatory comments regarding GZM on the website tripadvisor.com. (Paper 1 ¶ 32). After Plaintiffs informed Defendant that his actions were unauthorized, he sent a formal email resigning from his duties and any association with GZM. (Paper 1 ¶¶ 33-36). Plaintiffs allege that Defendant thereafter made a number of harmful changes to the GZM website, including hiding or deleting pages and links and changing the access codes so that Plaintiffs could no longer access the website to make modifications. (*Id.* at ¶¶ 85-93). On September 14, 2009, counsel for Plaintiffs sent a cease and desist letter to Defendant via email. (*Id.* at ¶ 96).

Defendant presents a different chronology. He alleges that Plaintiff Suson wrongly accused him of taking down the GZM website in June 2009 and that Plaintiffs ignored Defendant's repeated requests for a copy of GZM's application for non-profit tax-exempt status, prompting Defendant to terminate his services in August 2009. (Paper 8 ¶¶ 227-233). Defendant further asserts that after terminating his services, Plaintiffs refused to remove links to Defendant's shopping cart page and other services hosted on Defendant's server from the GZM website.

(*Id.* at ¶ 233).  This refusal prompted Defendant to file a take-down complaint with Google pursuant to the Digital Millennium Copyright Act ("DMCA") claiming that Plaintiffs were violating Defendant's copyrights.  (*Id.*).

On December 10, 2009, Plaintiffs filed a complaint in alleging seven causes of action:  (1) circumvention of copyright protection systems in violation of 27 U.S.C. § 1201, (2) copyright infringement in violation of 18 U.S.C. § 501, (3) conversion, (4) defamation of Gary Marlon Suson, (5) defamation of GZM, (6) tortious interference in a business relationship, and (7) intentional infliction of emotional distress, and seeking injunctive relief and damages.  (Paper 1).  On February 16, 2010, Defendant filed his answer and asserted nine counterclaims:  (1) fraud, (2) breach of contract implied in fact, (3) quantum meruit, (4) unjust enrichment, (5) breach of contract, (6) common law trademark infringement, passing-off, and misappropriation, (7) misuse of trade secret, (8) intentional infliction of emotional distress, and (9) defamation.  (Paper 8).  Plaintiffs moved to dismiss the counterclaims on April 19, 2010, (Paper 10), and Defendant filed his opposition on July 8, 2010.  (Paper 18).

## II.  Analysis

Plaintiffs seek dismissal of Defendant's counterclaims because they assert facts that Defendant specifically denied in his answer.  Plaintiffs contend that a party may not assert alternative facts in its pleadings; therefore a party may not add counterclaims if their facts are inconsistent with denials or admissions in the same party's answer.  (Paper 10, at 1-2). Defendant counters that parties may plead inconsistent allegations under the federal rules and that his claims and defenses are not inconsistent or contradictory.  (Paper 19).

Federal Rule of Civil Procedure 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  In applying this rule, courts have held that parties may plead inconsistent facts and inconsistent legal theories, and a defendant may assert counterclaims in its answer that are inconsistent with defenses raised in the same answer.  5 Charles Alan Wright and Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1283 (3d ed.)(2010); *see also Little v. Texaco, Inc.*, 456 F.2d 219, 220 (10th Cir. 1972) ("a defendant is at liberty to deny and at the same time advance an affirmative defense."); *Suntrust Mortgage, Inc. v. Busby*, 651 F.Supp.2d 472, 489 (W.D.N.C. 2009)(rejecting motion to dismiss counterclaims where the plaintiff was relying on inconsistencies in the

defendants' answer, affirmative defenses, and counterclaims).[2]
Pleading inconsistent facts is only prohibited where the
"inconsistent assertions of facts . . . serve as the factual
predicates for an independent, unitary claim," *In re Livent,
Inc. Noteholders Secs. Litig.*, 151 F.Supp.2d 371, 407 (S.D.N.Y.
2001), or where there is a showing that a party acted in bad
faith. *PAE Gov't Servs., Inc. v. MPRI Inc.*, 514 F.3d 857, 860
(9th Cir. 2007)("unless there is a showing that the party acted
in bad faith-a showing that can only be made after the party is
given an opportunity to respond under the procedures of Rule 11-
inconsistent allegations are simply not a basis for striking the
pleading."). Plaintiffs have not established that either
situation applies here.

Even if pleading inconsistent facts was impermissible,
Plaintiffs have failed to establish that Defendant has done so.
Plaintiffs identify three instances where Defendant allegedly
denied facts in his defenses and then alleged the same facts in
his counterclaims. First, Plaintiffs argue that Defendant
denied that GZM was an IRS 501(c)(3) organization in paragraph 1

---

[2] Plaintiffs rely on two cases in support of their argument that
a litigant may not assert alternative facts, a Virginia state
court opinion from 1919 and an Oklahoma state court opinion from
1971. (Paper 10, at 1-2). Neither case was interpreting the
Federal Rules of Civil Procedure, and neither is binding or even
persuasive authority for this court.

of his answer, but then stated that it was a 501(c)(3) organization in paragraph 213 of his counterclaims. (Paper 10, at 2)(referencing Paper 8 ¶¶ 1, 213). Defendant counters that Plaintiffs failed to use the correct name of Plaintiff GZM in their Complaint. He contends that Ground Zero Museum Workshop is not a registered non-profit entity; the proper name of the legal entity is the Committee for Ground Zero Museum Workshop, Inc. (Paper 19, at 3). Accordingly, Defendant denied the existence of Ground Zero Museum Workshop in his answer and asserted claims against the Committee for Ground Zero Museum Workshop, Inc. in his counterclaims. As proof, Defendant attached to his Opposition a copy of the Committee for Ground Zero Museum Workshop, Inc.'s registration with the State of New York. (Paper 18, Exhibit 1).

Second Plaintiffs argue that Defendant denied meeting with Plaintiff Suson and offering his services to GZM in paragraphs 15-16 of his answer and then alleged that the meeting occurred in paragraph 217 of his counterclaims. (Paper 10, at 2)(referencing Paper 8 ¶¶ 15-16 and 217). The relevant portions of the complaint and counterclaims provide:

> Complaint
> 15. On June 16, 2007, Defendant Wilson and partner Teresa Polino visited GZM.
> 16. Impressed with the work of Suson and GZM, Wilson offered to assist GZM by designing a shopping cart page for the GZM

> shop page as well as revamping the look of
> his Gift Shop page.  This shopping cart was
> an addition to the already existing Gift
> Shop page and the website as a whole.
>
> Counterclaim
> 217.   On or about June 2007, Defendant
> visited the Ground Zero Museum in New York
> city ("GZM") and met Gary Suson ("Suson").
> Defendant was moved by the images depicting
> the aftermath of the September 11, 2001
> terrorist attack on the Twin Towers in New
> York ("911 Attack") on display in the museum
> and with Suson's comments about GZM being a
> non-profit organization and with Suson's
> comments about his personal efforts to help
> raise money for the Fire Department of New
> York Widows and Orphans and other charitable
> organizations related to the 911 Attack.
> Suson represented to Defendant that he had
> started the GZM as a non-profit, charitable
> organization back in 2005.  As a direct
> result of Defendant's visit to GZM and
> Suson's comments, Defendant offered to
> assist Suson with website related services
> to help support Suson's stated non-profit
> and charitable relief cause.

(Paper 1 ¶ 15; Paper 8 ¶ 217).  Defendant argues that his denial

of the complaint paragraphs is not inconsistent with his

counterclaims.  Defendant explains that he denied paragraph 15

of the complaint because he does not believe he visited GZM on

June 16, 2007, and he argues that paragraph 217 is not

inconsistent with this denial.  (Paper 19, at 5).  Defendant

further states that he denied paragraph 16 because his offer to

assist Suson was not premised on his being "impressed with

Suson's work", but rather it was based on Suson's

representations that GZM was a non-profit organization raising money for charitable organizations. (*Id.*). Additionally, Defendant argues that because his allegation in counterclaim 217 does not identify specific web services that were offered, it does not contradict his denial of Plaintiffs' allegation in complaint paragraph 16. (*Id.* at 5).

Third, Plaintiffs argue that Defendant denied encoding the shopping cart and donations pages for the GZM website in paragraphs 19-20 of his answer and then asserted that he did create the code in paragraphs 219-222 of his counterclaims. (*Id.* at 2-3)(referencing Paper 8 ¶¶ 19-20, 219-222). The relevant portions of the complaint and counterclaims provide:

> Complaint
> 19. Upon receiving the layouts and designs, at the direction of Suson, Wilson created the code for the shopping cart page. This code was to be inserted into the existing GZM website files so that the shopping cart would be integrated into the existing webpage.
> 20. The shopping cart code was inserted into the existing GZM website files on or about the fall [sic] of 2007. After the insertion of the code, the Cart Designs logo appeared on the bottom of the website pages as a sponsor of GZM.
>
> Counterclaim
> 219. On or about July 2007, in direct reliance upon Suson's representations that GZM had little cash, was a non-profit organization and Suson's representations that Suson was not taking a salary or otherwise personally profiting from GZM

activates or Suson's other personal fundraising efforts, Defendant agreed promptly to donate certain services through Defendant's business known as Cart Designs.

220. Defendant's Cart Designs business provides "secure shopping cart" services for websites that enables website owners to offer items for sale via a page or pages on the website. Defendant's services involve providing internet merchants with a remotely hosted, customizable e-commerce shopping cart and secure SSL Gateway where their customers may pay for their products via credit or debit card, or check, using real-time or manual processing. Defendant's [sic] typically charges $299.00-$35,000 per year for similar services.

221. Shortly after commencing services for GZM, Defendant began to offer additional services to GZM typically handled by a "webmaster" including editing html code on webpages and making other modifications and enhancements to the website. Typically, Defendant would charge client's [sic] $150.00-$500.00 per hour for similar services.

222. In addition to other services, Defendant designed and configured a "donations" webpage that enabled GZM website visitors to make direct donations to GZM using Defendant's payment processing services. Typically Defendant would charge client's [sic] $150.00-$500.00 per hour for similar services.

(Paper 1 ¶¶ 19-20; Paper 8 ¶¶ 219-222). Defendant argues that the complaint paragraphs contain different factual allegations than those of his counterclaims. Where Plaintiffs allege that Defendant created a portion of Plaintiffs' website, Defendant maintains that he provided a link from Plaintiffs' website to his own. (Paper 19, at 7). Defendant further asserts that this

distinction regarding the ownership and placement of the shopping cart website is crucial to analyzing the merits of the parties' claims. (*Id.*).

Defendant's explanations demonstrate that there was no inconsistency in his pleading. The parties' allegations are not identical; they allege different events and circumstances with differing degrees of specificity. It is not surprising then that Defendant denied many of Plaintiffs' factual allegations and asserted his own version of the facts in his counterclaims.

In conclusion, Plaintiffs have failed to establish any justification for dismissal of Defendant's counterclaims. Contrary to Plaintiffs' assertion, the federal rules permit a party to plead inconsistent facts. Additionally, Defendant has provided an explanation of the differing assertions in his answer and counterclaims and demonstrated that they are not self-contradictory. Accordingly, Plaintiffs' motion to dismiss Defendant's counterclaims will be denied.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

11